**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FENGJUN SUN, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> 500.COM LIMITED, ZHENGMING PAN, and QIANG YUAN, <br><br>     Defendants. | Case No: <br><br> CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> JURY TRIAL DEMANDED |

Plaintiff Fengjun Sun ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by

Defendants, public filings, wire and press releases published by and regarding 500.com Limited ("500.com" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded 500.com securities between April 27, 2018 and December 31, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased 500.com securities during the Class Period and was economically damaged thereby.

7.     Defendant 500.com, through its subsidiaries, purports to provide online gaming services primarily in the People's Republic of China and Europe. The Company is incorporated in the Cayman Islands and its principal executive office is located at 12F, West Side, Block B, Building No. 7, Shenzhen 518115, The People's Republic of China. 500.com securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "WBAI."

8.     Defendant Zhengming Pan ("Pan") has served as the Company's President, Chief Executive Officer ("CEO"), and as a Director throughout the Class Period.

9.     Defendant Qiang Yuan ("Yuan") has served as the Company's Chief Financial Officer ("CFO") throughout the Class Period.

10.    Defendants Pan and Yuan are collectively referred to herein as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

12.     500.com is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to 500.com under *respondeat superior* and agency principles.

14.     Defendants 500.com and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading
### Statements Issued During the Class Period

15.     On April 27, 2018, 500.com filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2017 (the "2017 20-F"). Attached to the 2017 Form 20-F were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Pan and Yuan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

16.     The 2017 20-F stated the following regarding the risk of failing to obtain requisite approvals, licenses, and permits:

> Certain of our game providers require various approvals, licenses and permits to conduct their business, including business to business, or

5

B2B, gaming and software licenses. We cannot assure you that these providers will not encounter significant problems in obtaining new or renewing existing approvals, licenses and permits, or that they will continue to satisfy the conditions to which such approvals, licenses and permits granted. If previously obtained approvals, licenses and permits are revoked and/or if the providers fail to obtain and/or maintain the necessary approvals, licenses and permits required to conduct their business and/or host or manage games as currently provided, we may be required to temporarily suspend the operation of certain gaming services, which could have a material adverse effect on our business, financial condition, results of operations and prospects.

17.     The 2017 20-F stated the following regarding the Company's Code of

Ethics:

Our board of directors has adopted a code of ethics that applies to our directors, officers, employees and agents, including certain provisions that specifically apply to our chief executive officer, chief financial officer, chief strategy officer, financial controller and any other persons who perform similar functions for us. We have filed our code of business conduct and ethics as an exhibit to our registration statement on Form F-1. We hereby undertake to provide to any person without charge, a copy of our code of business conduct and ethics within ten working days after we receive such person's written request.

18.     The Company's Code of Ethics states the following regarding

compliance with laws, regulations, and policies:

*Employees have an obligation to comply with all laws, rules and regulations applicable to the Company's operations. These include, without limitation, laws covering bribery and kickbacks, copyrights, trademarks and trade secrets, information privacy, insider trading, illegal political contributions, antitrust prohibitions, foreign corrupt practices, offering or receiving gratuities, environmental hazards, employment discrimination or harassment, occupational health and*

*safety, false or misleading financial information or misuse of corporate assets*. It is your responsibility to understand and comply with the laws, regulations and policies that are relevant to your position. If any doubt exists about whether a course of action is lawful, you should seek advice from your supervisor or the Compliance Officer.

Failure to comply with applicable laws and regulations can result in civil and criminal liability against you and the Company, as well as disciplinary action by the Company against you, including termination of employment. You should contact the Compliance Officer if you have any questions about the laws, regulations and policies that may apply to you.

*The Foreign Corrupt Practices Act (the "FCPA") prohibits the Company and its employees and agents from offering or giving money or any other item of value to win or retain business or to influence any act or decision of any governmental official, political party, candidate for political office or official of a public international organization. The FCPA prohibits the payment of bribes, kickbacks or other inducements to foreign officials.* This prohibition also extends to payments to a sales representative or agent if there is reason to believe that the payment will be used indirectly for a prohibited payment to foreign officials. Violation of the FCPA is a crime that can result in severe fines and criminal penalties, as well as disciplinary action by the Company, including termination of employment.

Certain small facilitation payments to foreign officials may be permissible under the FCPA if customary in the country or locality and intended to secure routine governmental action. Governmental action is "routine" if it is ordinarily and commonly performed by a foreign official and does not involve the exercise of discretion. For instance, "routine" functions would include setting up a telephone line or expediting a shipment through customs. To ensure legal compliance, all facilitation payments must receive a prior written approval from the Compliance Officer and must be clearly and accurately reported as a business expense.

(Emphasis added.)

19.     In the 2018 20-F, the Company stated that the principal activity of its Japanese subsidiary, 500.com Nihon Co., Ltd., was investment holding, and that it had no substantive operations of its own.

20.     On April 22, 2019, 500.com filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2018 (the "2018 20-F"). Attached to the 2018 20-F were SOX certifications signed by Defendants Pan and Yuan attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

21.     The 2018 20-F stated the following regarding the risk of failing to obtain requisite approvals, licenses, and permits:

> Certain of our game providers require various approvals, licenses and permits to conduct their business, including business to business, or B2B, gaming and software licenses. We cannot assure you that these providers will not encounter significant problems in obtaining new or renewing existing approvals, licenses and permits, or that they will continue to satisfy the conditions to which such approvals, licenses and permits granted. If previously obtained approvals, licenses and permits are revoked and/or if the providers fail to obtain and/or maintain the necessary approvals, licenses and permits required to conduct their business and/or host or manage games as currently provided, we may be required to temporarily suspend the operation of certain gaming services, which could have a material adverse effect on our business, financial condition, results of operations and prospects.

22.     The 2018 20-F stated the following regarding the Company's Code of Ethics:

Our board of directors has adopted a code of ethics that applies to our directors, officers, employees and agents, including certain provisions that specifically apply to our chief executive officer, chief financial officer, chief strategy officer, financial controller and any other persons who perform similar functions for us. We have filed our code of business conduct and ethics as an exhibit to our registration statement on Form F-1. We hereby undertake to provide to any person without charge, a copy of our code of business conduct and ethics within ten working days after we receive such person's written request.

23.     In the 2018 20-F, the Company stated that the principal activity of its Japanese subsidiary, 500.com Nihon Co., Ltd., was investment holding, and that it had no substantive operations of its own.

24.     The statements contained in ¶¶15-23 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) 500.com executives and consultants engaged in a bribery scheme with Japanese officials in an effort to gain favor in a bid to run an upcoming Japanese casino resort; (2) consequently, 500.com was in violation of Japanese anti-bribery laws and its Code of Ethics; and (3) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

25.     On December 31, 2019, the Company issued a press release announcing a Special Investigation Committee ("SIC") was formed by the Board to investigate illegal money transfers and the role played by consultants following the arrest of one current consultant and two former consultants by the Tokyo District Public Prosecutors Office. The press release stated, in pertinent part:

> SHENZHEN, China, December 31, 2019 /PRNewswire/ -- 500.com Limited (NYSE: WBAI) ("500.com" or the "Company"), a leading online sports lottery service provider in China, today announced that the Company's Board of Directors (the "Board") *has formed a Special Investigation Committee ("SIC") to internally investigate alleged illegal money transfers and the role played by consultants following the arrest of one consultant(also a former director of the Company's subsidiary in Japan) and two former consultants by the Tokyo District Public Prosecutors Office.*

> Concurrently Mr. Xudong Chen, Chairman of the Board, has resigned, effective December 30, 2019. Mr. Chen's resignation was not based on any disagreement with the Company on any matter related to its business, finance, accounting and/or any other affairs. In addition, the Board has accepted the request from *Mr. Zhengming Pan, Director and Chief Executive Officer, to temporarily step aside from his positions, effective December 30, 2019, until the conclusion of the SIC's investigation in order to ensure a thorough and fair investigation*.

> Mr. Shengwu Wu has been elected to replace Mr. Chen as Chairman of the Board and Mr. Zhaofu Tian, 500.com's current Chief Technology Officer, has been appointed as Interim Chief Executive Officer, effective December 30, 2019 until the conclusion of the SIC's investigation. Mr. Wu will join the Board's Compensation Committee and chair the Strategic Planning Committee.

> Mr. Wu joined Tsinghua Unigroup in September 2019 as an Executive Vice President. Prior to joining Tsinghua Unigroup, Mr. Wu served as the Deputy Director of the Department of Electronic

Information under the Ministry of Industry and Information Technology of the People's Republic of China. Mr. Wu holds a Ph.D from Huazhong University of Science and Technology, as well as a master's and a bachelor's degree from Tsinghua University.

The SIC of the Board is composed of Mr. Shengwu Wu, Chairman of the Board, Mr. Honghui Deng and Ms. Angel Yan Ki Wong, each independent director of the Board, and Ms. Amy Yang Zhou, General Manager of the International Collaboration Department of Tsinghua Unigroup.

(Emphasis added.)

26.     On this news, shares of 500.com fell $0.91 per share or over 10% to close at $7.52 per share on January 2, 2020, the following trading day, damaging investors.

27.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired 500.com securities publicly traded on NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of 500.com, members of the Individual Defendants' immediate families and their legal representatives,

heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, 500.com securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of 500.com;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused 500.com to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of 500.com securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- 500.com shares met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- As a public issuer, 500.com filed periodic public reports;

- 500.com regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- 500.com's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- 500.com was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

35.    Based on the foregoing, the market for 500.com securities promptly digested current information regarding 500.com from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## <u>COUNT I</u>
### **For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder <u>Against All Defendants</u>**

37.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they

contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40.   Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of 500.com securities during the Class Period.

41.   Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of 500.com were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue

of their receipt of information reflecting the true facts of 500.com, their control over, and/or receipt and/or modification of 500.com's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning 500.com, participated in the fraudulent scheme alleged herein.

42.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other 500.com personnel to members of the investing public, including Plaintiff and the Class.

43.    As a result of the foregoing, the market price of 500.com securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of 500.com securities during the Class Period in purchasing 500.com securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

44.     Had Plaintiff and the other members of the Class been aware that the market price of 500.com securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased 500.com securities at the artificially inflated prices that they did, or at all.

45.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of 500.com securities during the Class Period.

### COUNT II
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

47.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     During the Class Period, the Individual Defendants participated in the operation and management of 500.com, and conducted and participated, directly and indirectly, in the conduct of 500.com's business affairs. Because of their

senior positions, they knew the adverse non-public information about 500.com's misstatement of revenue and profit and false financial statements.

49.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to 500.com's financial condition and results of operations, and to correct promptly any public statements issued by 500.com which had become materially false or misleading.

50.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which 500.com disseminated in the marketplace during the Class Period concerning 500.com's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause 500.com to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of 500.com within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of 500.com securities.

51.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by 500.com.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:        January 15, 2020          Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        By: /s/ Laurence M. Rosen
                                        Laurence M. Rosen, Esq.
                                        One Gateway Center, Suite 2600
                                        Newark, NJ 07102
                                        Tel: (973) 313-1887
                                        Fax: (973) 833-0399

Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*